MORGAN *et al. v.* HUGGINS *et al.*

*(Circuit Court, N. D. Georgia.* July 6, 1891.

1. COSTS OF ADMINISTRATION—PLEADING.
    When, in a suit in a federal court to annul a will, the administrator, without objection, files an amended answer, alleging that the complainants have attempted by litigation in this and the state courts to have the will declared void, and have thus required large sums to be paid out as counsel fees, costs, and expenses, which are debts against the estate, and that these items are properly chargeable against undevised property, etc., this is sufficient to warrant the court in deciding upon what part of the estate these expenses are chargeable.

2. SAME—CHARGEABLE UPON UNDEVISED ESTATE.
    Where a will names but a single legatee, and the court decides that the devise to him does not carry after-acquired real estate, the costs of the administration and the debts of the estate are chargeable upon such undevised lands, under Code Ga. § 2533, which classes the "necessary expenses of administration" with the debts of the estate, and section 2534, making debts chargeable upon undevised estate when not otherwise specially provided by the will, and when there is no residuary clause.

In Equity. Bill by Morgan and others, as assignees of certain heirs at law of Riley Garrett, to restrain H. H. Huggins, his administrator,

from selling or otherwise disposing of the property of the estate, and praying an accounting.   On exceptions to the report of the special master.

*H. H. Perry, P. L. Mynatt,* and *G. A. Howell,* for complainants.
*Hopkins & Glenn* and *Alexander S. Erwin,* for respondents.

NEWMAN, J.   When this case was before the court for the construction of the will of Riley Garrett, deceased, it was held that the intention of the testator was to give all of his estate, after paying his burial expenses, to William Augustus Wheeles.   42 Fed. Rep. 869.   It was further held that the real estate acquired by the testator subsequently to the making of the will did not pass thereunder.   The question now presented for determination arises on the report of the special master, to whom the case was referred for the purpose of ascertaining the amount, value, rents, etc., of the real estate left by Garrett at the time of his death, and the date that he acquired the same.   The special master was further directed to report "what sums have been paid out or incurred on account of the costs or expenses in procuring administration, or in administering said estate, in establishing and probating the will, and in litigation in which the estate has been or is involved." The order provided that the court did not then determine what portion, if any, of said costs or expenses should be charged to the real estate.   The report of the special master has been filed.   After giving the amount of the real estate of the testator, and rents collected for the same, insurance and taxes paid on the same, he finds that the amount of the costs and expenses in procuring the administration and in administering the estate, in establishing and probating the will, and litigation in which the estate has been or is involved, (and assuming that this relates to costs and expenses incurred and paid by defendant, and does not relate to the costs and expenses incurred and paid by H. G. Long, temporary receiver,) is $10,366.24.   It is urged that the pleadings in this case are not in shape to allow the question as to the amount of the necessary costs and expenses of administration, and from what portion of the estate they shall be paid, to be determined.   It appears that on October 6, 1889, defendant filed an amendment to his answer, as follows:

"Defendant H. H. Huggins, administrator, etc., further said that complainants have no just or legal claims to any part of this estate.   If respondent should be mistaken in this, then he shows as follows:   The persons under whom complainants claim and complainants have attempted by litigation in this and the state courts to have the will declared void, and thus defeat all rights under it, and in such attempts have caused large sums to be paid out as counsel fees, costs, and expenses, and these were and are also debts against the estate; and respondent says all these items are properly chargeable against undevised property, if any there should be, which he denies."

My recollection is that this amendment was filed during the argument as to the construction of the will, with the statement that it did not affect the question then before the court; that counsel desired to file it for future use, if it should become necessary.   No demurrer or objection of any kind to this amendment appears in the record, and it seems

to be sufficient to raise the question now under consideration, which question seems to be important to the final determination of the rights of the parties as to the subject-matter of the entire litigation. Besides this, the order of reference to the special master embraced this very subject, and that order was taken by consent, as the court understood at the time.

The other question for determination now is as to how and from what part of the estate the costs and expenses shall be paid. Section 2533 of the Code of Georgia classes the "necessary expenses of administration" with the debts of the estate, and states the order in which they shall rank as to payment out of the estate. Section 2534 is as follows:

" All the estate, real and personal, unless otherwise provided by this Code, is liable for the payment of debts. If there is a will, the property charged with the debts should be first applied; next the residuum, or, if there be no residuary clause, the undevised estate; next, general legacies may abate *pro rata;* and, lastly, specific legacies must contribute."

And so it will be seen that in this case, there being no property charged with the debts, the residuum of the estate, if there be such, is next liable, and, if there be no residuary clause, the undevised estate. It must first be ascertained, then, whether or not there is a residuary clause in the will of Riley Garrett. Bouvier defines "residue:" "That which remains of something after taking away some part of it. The residue estate is that which has not been particularly devised by will." Wharton's definition of "residuum" is: "The surplus of a testator's or intestate's estate after discharging all his liabilities." In the case of *Graves* v. *Howard,* 3 Jones, Eq. 302, the residue of the testator's estate and effects is said to mean "what is left after all liabilities are discharged, and all the objects of the testator are carried into effect." In Rapalje & Lawrence there is a distinction in the definition of this term, "residue," when applied to "devises," and to "legacies;" but it is substantially the same as that before given. As is urged by counsel for the administrator in this case, the residuary clause in the will is one which, together with the other clauses of the will, completely exhausts the estate,—disposes of all the property of the estate. The term "residuary clause" seems to contemplate former provisions in the will to carry into effect the wishes of the testator as to the disposition of his estate, and this expression is used to cover all that remains after such former dispositions of property have been carried out. The intention of the section of the Code, evidently, is not to interfere with the wishes of the testator, as expressed, concerning the disposition of his estate; and so, if the testator himself had not, by the will, specially charged any property with the payment of debts, the residuum should be next applied, or, if no residuary clause, the undevised estate. By the decision of this court only the personalty passes to Wheeles, as all the real estate left by the testator, it is understood, was after-acquired, and goes to the heirs at law or their assignees. Now, both under the letter and the evident intent and meaning of this statute, it would seem that the debts of this estate must be paid from the undevised estate, and that, in

this case, embraces the real estate left by Garrett at his death, and acquired subsequently to the making of the will. It has been stated in argument that all this large amount of costs and expenses has been incurred by the administrator in litigation with the heirs at law of Riley Garrett and their assignees, and it is further stated that all this litigation has been determined against these heirs and assignees, and that they, having thus caused this expenditure for costs and expenses, should be required, as the losing party, to pay it. I am unable from the report to determine satisfactorily this question, and it is probably unnecessary, in view of the construction I have given the sections of the Code referred to. In view of the large amount reported by the special master as costs and expenses claimed by the administrator, and of the indefiniteness of some of the items,—especially the last two for $1,409 and $1,029,—I think that the special master should be required to report, either upon the evidence already taken, or upon hearing additional evidence, as to whether all or how much of the amount claimed should be allowed the administrator.

---

Having heretofore concluded, as expressed above, that the pleadings in this case are sufficient to authorize the court to determine what have been the necessary expenses of administering the estate of Riley Garrett, deceased, and how such expenses shall be paid, and, second, that the necessary expenses being, under Code of Georgia, a part of the debts of an estate, the court referred the matter back to the special master to ascertain the necessary expenses of administration which should be allowed him in this case. The special master has made another report in which he states in detail, after having heard additional evidence, the necessary expenses of the administration, giving each item of expense and the vouchers for the same. Of the items alluded to by the special master in his report, the only ones about which I have had any serious difficulty are the expenses of propounding the will of Riley Garrett, and, especially, as to the large amounts of counsel fees paid out by the administrator before the will was finally established. It seems, however, from the evidence, and the receipts and records presented, that, as to the largest part of this expense, namely, the fees of Dunlap and Dorsey, suit was brought for the same against the present administrator, Huggins, and for an amount considerably larger than that for which verdicts were afterwards obtained. It appears that the administrator resisted the payment of these amounts, but was compelled by the result of the suit to pay them. There was another fee of $1,000 paid to Hopkins & Glenn, which was voluntarily paid by Huggins for services in the litigation over the probate of the will. The special master has reported in favor of all these expenses being allowed the administrator, and there is no evidence whatever to show that they were not paid in good faith to carry out what was believed to be the expressed wish of Riley Garrett as to the disposition of his estate, propounders' views having since been sustained by the courts. I am not prepared to say, while somewhat doubtful about it,

that these items should not be allowed as part of the necessary expenses of the administration.

As to the other exceptions, the court believes the findings and report of the special master to be correct; and, consequently, all the exceptions are overruled, and the report of the special master confirmed.